UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN ZARBA and SUSAN LEMOIE ZARBA, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 19-11368-LTS |
| THE TOWN OF OAK BLUFFS, et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON MOTIONS TO DISMISS (DOC. NOS. 86, 88, 90)

August 11, 2020

SOROKIN, J.

Now before the Court are motions to dismiss Plaintiffs' First Amended Complaint, filed on behalf of three sets of Defendants. Doc. Nos. 86 (filed on behalf of The Town of Oak Bluffs), 88 (filed on behalf of nine individually named Town officials), 90 (filed on behalf of the Town Counsel and Town Counsel law firm). For the reasons that follow, the motions are ALLOWED.

I.    BACKGROUND[1]

This lawsuit, arriving in federal court after years of litigation in Massachusetts Land Court and Superior Court involving the Plaintiffs, arises out of a boundary dispute. In March 2016, Plaintiffs were sued in Massachusetts Land Court by a neighboring property owner, the O'Neill Trust, which sought a prescriptive easement to drive construction vehicles across a dirt road on Plaintiffs' property. Doc. No. 85 ¶ 15. As a part of that Land Court action, in June

---

[1] The Court recounts the facts as set forth in the First Amended Complaint, Doc. No. 85, and documents attached thereto. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

2016, the O'Neill Trust joined the Town of Oak Bluffs, which owned cemetery land abutting the Plaintiffs' property.  Id. ¶ 20.  Shortly thereafter, in late June 2016, Plaintiffs finished work on a guest home at their Oak Bluffs property and sought a Certificate of Occupancy Permit from the Oak Bluffs Building Inspector, Mark Barbadoro.  Id. ¶ 22.  Based on a review of Plaintiffs' title that had been undertaken as a part of the O'Neill Trust litigation in Land Court, Town Counsel Ronald Rappaport and Michael Goldsmith advised Barbadoro that "the survey used by the Plaintiffs to obtain a building permit for their guest house did not accurately portray the southern property line of the [Plaintiffs'] lot," and given this allegedly faulty survey, "the siting of the guest house might be unlawful."  Doc. No. 91 at 3; Doc. No. 85 ¶ 23.  In light of this advice and the pending Land Court litigation that promised to resolve the property line question, on July 13, 2016, Barbadoro deferred decision on Plaintiffs' Certificate of Occupancy Permit and instead issued a temporary Certificate of Occupancy that was valid for one year.  Doc. No. 74-5 at 10.

      According to Plaintiffs, on September 29, 2016, Barbadoro "sent a Parking Violation letter to [Plaintiffs] stating that they will be issued a $300 dollar [sic] a day fine each day that they parked on their land."  Doc. No. 85 ¶ 31.  About a month later, on November 1, 2016, Barbadoro sent another communication to Plaintiffs informing them that the Town's title examiner and surveyor had determined that their guest home had been built too close to the boundary line between their property and Town land.  Doc. No. 74-6 at 4.  Barbadoro further advised Plaintiffs that they must either conform their building to the twenty-foot setback or seek relief from the Oak Bluffs Zoning Board of Appeals.  Id.  Finally, Barbadoro stated that, should the matter remain unresolved by February 1, 2017, Plaintiffs' temporary Certificate of Occupancy would be revoked, and they would face fines under to the Town's zoning laws.  Id.

Thereafter, Plaintiffs appealed Barbadoro's order to the Zoning Board of Appeals, which upheld the order on February 16, 2017.  Doc. No. 85 ¶ 41.  Then, on March 17, 2017, Plaintiffs appealed the Zoning Board of Appeals' decision to Massachusetts Land Court.  Id. ¶ 43.  After a three-day trial, the Land Court ruled in Plaintiffs' favor, concluding that they had established by a preponderance of the evidence that "the guest house they built is at least 20 feet from that boundary, thus meeting the setback requirement under the bylaw."  Doc. No. 87-1 at 23.  However, the Land Court also found that the Plaintiffs' and the Town's surveys of the boundary line were "equally plausible and equally flawed," and that the boundary line "remains uncertain even after hearing the testimony [of each party's surveyor] and reviewing the deeds and plans on which they relied."  Id. at 17, 21.  In a separate decision resolving Plaintiffs' motion for fees and costs, the Land Court concluded that the Zoning Board of Appeals' initial determination was not "grossly negligent, in bad faith, or malicious."  Doc. No. 91-3 at 2.  Finally, on April 4, 2018, yet another Land Court decision (issued amidst extensive litigation between Plaintiffs and a second set of neighbors, the Murphy Family Trust), resolved the matter of Plaintiffs' compliance with local parking regulations, determining that they would be in compliance "if they built an additional parking space."  Zarba v. Town of Oak Bluffs, No. 17MISC000139 (Mass. Land Ct. Apr. 4, 2018) (Piper, J.).

Plaintiffs now allege multiple violations of federal and state law arising out of these events.  As to their federal claims, they allege violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Takings Clause of the Fifth Amendment, and a conspiracy to violate civil rights in violation of 42 U.S.C. § 1985(3), arguing: (1) that the Town's adverse zoning decisions were made because "Ms. Zarba is a women builder [sic]," Doc. No. 85 ¶¶ 56, 87; (2) that Town officials arbitrarily doubled the tax value of Plaintiffs' property, id.

¶ 52; (3) that the Town's zoning decisions were irrational, arbitrary, and unreasonably delayed, id. ¶¶ 60-61; (4) that members of the Town government and Town Counsel conspired with Plaintiffs' neighbors to deprive the Plaintiffs of their property, id. ¶ 70; and (5) that restrictions placed on their parking, the denial of a Final Occupancy Permit, their alleged loss of rental income from their guest home, and the Town's decisions to "install[] a public street sign, mow[], snow plow[] and grad[e] dirt" on Plaintiffs' street constituted a taking of Plaintiffs' property, id. ¶¶ 115-22.  They also allege a host of state law violations: "aiding and abetting fraud," id. ¶¶ 95-113; violations of the Massachusetts Civil Rights Act, id. ¶¶ 131-35; violations of the Massachusetts Declaration of Rights, id. ¶¶ 136-39; s "invasion of private property," id. ¶¶ 140-50; and "Negligence and Negligence Infliction of Emotional Distress," id. ¶¶ 151-55.

II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The complaint must also "set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"  Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  Courts must "take all factual allegations [in the Complaint] as true and . . . draw all reasonable inferences in favor of the plaintiff."  Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007).

III. DISCUSSION

At the outset, the Court notes that the forty-three-page First Amended Complaint contains no factual allegations as to Defendants Andrea Rogers, Peter Yoars, Michael Perry, or Llewellyn Rogers. Accordingly, all claims are DISMISSED as to those defendants.

Next, the Court notes that there is no direct cause of action under the Massachusetts Declaration of Rights, Pimentel v. Methuen, 323 F. Supp. 3d 255, 273 (D. Mass. 2018). Accordingly, Count VII is DISMISSED.

Additionally, it is well-settled that municipalities may not be held liable for violations of 42 U.S.C. § 1983 absent allegations of an unconstitutional municipal policy, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 665 (1978), nor may they be held liable for violations of the Massachusetts Civil Rights Act, Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002), for intentional torts, see Mass. Gen. Laws ch. 258, § 10(c), or for claims arising out of the issuance or denial of a permit, see Mass. Gen. Laws ch. 258, §10(e). The First Amended Complaint does not allege the kind of "affirmative link necessary to sufficiently plead a supervisory liability claim, and/or a policy or custom of the [Town] which led to the alleged constitutional violation." Williams v. Bisceglia, 115 F. Supp. 3d 184, 189 (D. Mass. 2015) (quotation marks omitted). Accordingly, all claims are DISMISSED as to the Town of Oak Bluffs.

The Court now turns to the remaining federal and state law claims against the remaining individual Defendants, the Town Counsel, and the Town Counsel law firm.

A. Federal Law Claims

1. *Due Process*

Plaintiffs allege both procedural and substantive Due Process Clause claims. As to their procedural due process claim, the First Circuit has held that "informal meetings with town

5

officials coupled with judicial review in the state courts satisfie[s] the Constitution's procedural due process requirements." Quinn v. Bryson, 739 F.2d 8, 11 (1st Cir. 1984). Here, Plaintiffs appealed the permit denial and parking dispute to the Zoning Board of Appeals and later sought redress before the Land Court. Doc. No. 85 ¶¶ 36-41. Plaintiffs provide no factual allegations as to how the state's post-deprivation remedial process was inadequate; thus, "no claim of a violation of procedural due process can be brought under § 1983." Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992). And, to the extent that Plaintiffs' procedural due process claim arises out of an alleged abuse of process, the First Circuit has held "that proof of abuse of process alone cannot support a finding of liability under § 1983." Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989).

As to Plaintiffs' substantive due process claim, the First Circuit has explained that "rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process." Torromeo v. Town of Fremont, 438 F.3d 113, 118 (1st Cir. 2006). And where, as here, a justice of the state's Land Court has determined that the Zoning Board of Appeals did not act in bad faith, and that its decisions were premised on reasonable recommendations from Town officials, the Complaint fails to allege the sort of "truly outrageous, uncivilized, and intolerable" behavior that is required to state a substantive due process claim. Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006).

Accordingly, Counts I and III of the First Amended Complaint, insofar as they allege violations of the Due Process Clause, are DISMISSED.

    2. *Equal Protection*

Plaintiffs' Equal Protection Clause claim fares no better. As a threshold matter, the First Circuit has expressly cautioned against entertaining Equal Protection suits arising from local

zoning board decisions. Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 44-45 (1st Cir. 1992); PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991). Indeed, "[i]f disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court." Nestor Colon Medina, 964 F.2d at 44-45. The present case epitomizes the dangers that the First Circuit sought to avoid. Here, Plaintiffs have failed to allege any facts about "similarly situated" property owners, let alone any facts as to how such owners were treated differently than Plaintiffs. See Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (holding that plaintiffs failed to state an Equal Protection claim when they did no "more than point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated") (alterations omitted). Nor do Plaintiffs' conclusory references to Ms. Zarba's status as "a women builder [sic]" resuscitate their claim.[2] Where, as here, Plaintiffs have provided no factual allegations about "similarly situated" applicants, nor any nonconclusory allegations about differential treatment on the basis of a protected characteristic, an Equal Protection claim does not lie. See Dupont v. Dubois, 99 F.3d 1128 (1st Cir. 1996).

Accordingly, Count III of the First Amended Complaint, insofar as it alleges a violation of the Equal Protection Clause, is DISMISSED. Similarly, because Plaintiffs have presented no factual allegations showing that "the defendants conspired against them because of their

---

[2] Similarly, twice alleging "racial animus" without any other related factual allegations is too conclusory to support the claims alleged. Doc. No. 85 at p.2 & ¶ 88.

membership in a class," Aulson v. Blanchard, 83 F.3d 1, 4 (1st Cir. 1996), Count II, alleging a conspiracy to violate civil rights, is also DISMISSED.[3]

### 3. *Takings Clause*

Plaintiffs allege that the denial of a Final Occupancy Permit, certain parking enforcement actions, and certain Town improvements (like mowing, grading, and sign posting) violated their rights under the Takings Clause of the Fifth Amendment.

Some of Plaintiffs' allegations—those relating to the denial of the Final Occupancy Permit and the enforcement of parking regulations—are appropriately viewed as claims of regulatory takings. This type of taking is confined to "regulatory actions that are functionally equivalent to the classic taking in which [the] government directly appropriates private property or ousts the owner from his domain[,]" with the inquiry focusing on "the severity of the burden that [the] government imposes upon private property rights." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 539 (2005). "[A] regulatory taking occurs where 'government regulation of private property [is] so onerous that its effect is tantamount to a direct appropriation or ouster.'" Rancho de Calistoga v. City of Calistoga, 800 F.3d 1083, 1088-89 (9th Cir. 2015) (quoting Lingle, 544 U.S. at 537). "[T]he test for how far [i]s 'too far' require[s] an 'ad hoc' factual inquiry. That inquiry require[s] considering factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." Horne v. Dep't of Agric., 576 U.S. 350, 360 (2015) (quoting Penn Cent. Transp. Co. v. New York, 438 U.S. 104, 124 (1978)).

---

[3] Insofar as Count II is premised on allegations related to the Town's property tax assessment, such challenges must be pursued through state law procedures. See Ludwin v. Cambridge, 592 F.2d 606, 609 (1st Cir. 1979) (finding "the absence of any allegation of a prior state adjudication [as to a tax assessment] to be a fatal deficiency in plaintiff's case").

Under this framework, Plaintiffs' regulatory takings claims are subject to dismissal. While the First Amended Complaint includes conclusory allegations about the deprivation of "economically viable" uses of Plaintiffs' property, Doc. No. 85 ¶ 115, the Supreme Court has held that mere "diminution in the value of property, however serious, is insufficient to demonstrate a taking." Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal., 508 U.S. 602, 645 (1993); see also Penn Cent., 438 U.S. at 131 (noting that courts "uniformly reject the proposition that diminution in property value, standing alone, can establish a 'taking'"). In addition, Plaintiffs include no factual allegations as to their reasonable investment-backed expectations. Dyson v. City of Calumet City, 306 F. Supp. 3d 1028, 1046 (N.D. Ill. 2018) (dismissing a partial regulatory takings claim were the plaintiff did "not plead enough information to evaluate" this factor). Finally, the government action at issue here—consideration of permit applications not found to be malicious by a state court, and enforcement of parking regulations—is typically given great leeway by courts. Sutton v. Chanceford Twp., 186 F. Supp. 3d 342, 349 (M.D. Pa. 2016) (noting that "[s]tate and local laws affecting land use, including zoning laws, are extended broad latitude under current standards").

As to the physical improvements that Plaintiffs challenge—like snow plowing, mowing, installing a public street sign, and changing the level of a grade—these transient invasions do not give rise to a Fifth Amendment claim. O'Grady v. City of Montpelier, 573 F.2d 747, 750 (2d Cir. 1978) (holding that "it is fairly well established that changing the level of a grade of a road does not constitute a taking"); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1357 (Fed. Cir. 2002) (holding that "extremely limited and transient" invasions of property "preclude a finding that a taking occurred as a matter of law").

Accordingly, Count V of the First Amended Complaint is DISMISSED.

B.      State Law Claims

Plaintiffs' state law claims also fail. Count IV, which alleges "aiding and abetting fraud," is based solely on conclusory allegations regarding the Town Counsel's advice to members of the Town government. See Doc. No. 85 ¶¶ 99-107. The First Amended Complaint does not include any plausible factual allegations of an underlying tort, which is necessary to state such a claim under Massachusetts law. ZVI Constr. Co. v. Levy, No. SUCV201300342BLS2, 2013 WL 5531803, at *6 (Mass. Super. Ct. June 27, 2013), aff'd, 60 N.E.3d 368 (Mass. App. Ct. 2016). Count VI, which alleges violations of the Massachusetts Civil Rights Act, must be dismissed because the First Amended Complaint contains no nonconclusory allegations of "threats, intimidation, and coercion," as is required to state such a claim. Horne v. City of Bos., 509 F. Supp. 2d 97, 115 (D. Mass. 2007).

Count VIII, alleging "invasion of private property," similarly fails. Plaintiffs do not allege that any defendant physically trespassed onto Plaintiffs' property. Rather, their allegations reference the Town's reliance on a land survey to inform its permitting and enforcement decisions, the placement of a street sign near Plaintiffs' home, as well as mowing, snow plowing, and grading near their property. Doc. No. 85 ¶¶ 141-46. Such allegations do not state a cognizable claim under Massachusetts law. See Walker v. Jackson, 56 F. Supp. 3d 89, 95 (D. Mass. 2014) (stating that a civil trespass claim under Massachusetts law must include allegations of actual possession of property that is intentional and illegal).

Finally, Count IX, alleging negligence and negligent infliction of emotional distress under the Massachusetts Tort Claims Act, must be dismissed. The individually named Town employee defendants are categorically immune from such claims, Mass. Gen. L. ch. 258 § 2, and the Town Counsel enjoy absolute immunity from claims arising out of their representation of the

Town, see Tomaselli v. Beaulieu, No. 08-cv-10666-PBS, 2010 WL 1460259, at *6 (D. Mass. Apr. 1, 2010) ("Since all of the conduct by [the Town Counsel] which the plaintiffs challenge is closely related to the judicial process, or the lawyer's role as an advocate, the attorneys are entitled to absolute immunity.") (quotation marks and alterations omitted).

Accordingly, Counts IV, VI, VIII, and IX of the First Amended Complaint are DISMISSED.

IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, Doc. Nos. 86, 88, 90, are ALLOWED.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge